UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Cherie Ann Lacourse,

    v.                                    Civil No. 15-cv-375-JL
                                                      Opinion No. 2016 DNH 140
Carolyn Colvin,
Acting Commissioner,
Social Security Administration


**ORDER ON APPEAL**

Cherie Ann Lacourse has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite several severe impairments, including fibromyalgia, post-traumatic stress disorder, and cognitive disorder, Lacourse retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and thus is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council granted Lacourse's request for review of the ALJ's initial decisions, see id. § 404.967, vacating the ALJ's decision and remanding for further proceedings. The ALJ issued a new decision on remand, and the Appeals Council denied Lacourse's request for review thereof, with the result that the ALJ's second decision became the final decision on Lacourse's application, see id. § 404.981. Lacourse then appealed that

decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Lacourse has moved to reverse the decision, see L.R. 9.1(b), contending that the ALJ erred (1) by incorrectly weighing the opinion of one medical source when determining Lacourse's RFC, and (2) in his assessment of the credibility of Lacourse's subjective complaints. The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision. See L.R. 9.1(e). After careful consideration, the court grants the Acting Commissioner's motion to affirm (and denies Lacourse's motion to reverse) the ALJ's decision.

## I. Applicable legal standard

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The court will uphold the ALJ's decision if it is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). Though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support

his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## II. **Background**[1]

The ALJ invoked the requisite five-step process in assessing Lacourse's request for disability benefits. See 20 C.F.R. § 416.920. First, he concluded that Lacourse had not engaged in substantial gainful activity during the period between the alleged onset of her disability on May 20, 2011, and the date she will no longer be insured, December 31, 2016. He then analyzed the severity of Lacourse's impairments, concluding that Lacourse suffered from three severe impairments: fibromyalgia, post-traumatic stress disorder, and cognitive disorder. Admin. R. at 27.

At the third step, the ALJ found that Lacourse's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations. See 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. After reviewing the medical evidence of record, Lacourse's own statements, and opinions from no fewer than 11 consultants and treating providers, the ALJ concluded that Lacourse retained the

---

[1] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their Joint Statement of Material Facts (document no. 9) is incorporated by reference. See L.R. 9.1(d).

RFC to perform simple, unskilled, light work, albeit with several physical limitations, in a low stress environment ("defined as requiring little to no change in the work setting and little to no need for the use of judgment"), and was able to "maintain attention and concentration for two-hour increments throughout an eight-hour workday."  Admin. R. at 29.  Finding that, limited in this manner, Lacourse was unable to perform her past, relevant work as a cosmetologist or special education teacher, see 20 C.F.R. § 404.1565, the ALJ continued to step five, where he concluded that Lacourse could perform jobs that exist in significant numbers in the economy.  Therefore, the ALJ found, Lacourse was not disabled within the meaning of the Social Security Act.

### III. Analysis

Lacourse challenges two aspects of the ALJ's analysis.  First, she contends that the ALJ erred in crafting Lacourse's RFC by incorrectly weighing the opinion of Dr. Bennett Slotnick, a neuropsychologist who evaluated Lacourse and opined that Lacourse may be limited to part-time work.  Second, Lacourse argues that substantial evidence does not support the ALJ's determination that Lacourse's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible."  Admin. R. at 13.  The court

4

addresses each of these arguments in turn and concludes that the ALJ did not err on either front.

### A. Residual functional capacity

In crafting Lacourse's RFC, the ALJ weighed and considered the medical opinions of some 11 sources. Lacourse challenges the weight given to one portion of one of these opinions -- that of Dr. Slotnick, who performed a neuropsychological examination on Lacourse at the request of her vocational rehabilitation counselor. The ALJ afforded weight to the majority of Dr. Slotnick's opinion, but gave "less than great weight" to that opinion only "to the extent that [Dr. Slotnick] appears to limit [Lacourse] to part-time work." Admin. R. at 34-35. The ALJ discounted that portion of Dr. Slotnick's opinion because "[t]he evidence of record does not reflect cognitive impairment that would prevent [Lacourse] from working at least simple, unskilled work on a full-time basis." Id. at 35. Lacourse argues that the ALJ erred by giving less than great weight to Dr. Slotnick's conclusion that Lacourse could work only part time.

The ALJ weighs the medical opinions "based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be

5

brought to the ALJ's attention." Grant v. Colvin, 2015 DNH 59, 7 (citing 20 C.F.R. § 416.927(c)). It is for the ALJ to resolve conflicts between medical opinions, and the ALJ's decision to resolve those conflicts against the claimant must be upheld if "that conclusion has substantial support in the record." Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982). Substantial evidence is that which a "reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ's decision is so supported here.

The record contains three other opinions that address the effects of Lacourse's mental impairments on her ability to work. As the ALJ points out, Dr. Darlene Gustavson, who also examined the plaintiff, noted that she was "able to sustain attention and concentration, persistence and pace, . . . complete tasks, . . . [and] tolerate stresses common to a work environment, which includes the ability to . . . consistently maintain attendance and schedule." Admin. R. 32. The ALJ also relied, to a degree appropriate for a source that is not considered an "acceptable medical source," on the opinion of Lacourse's treating counselor that her "level of functioning and overall ability with regards

6

to her mental health was within normal limits," and that she observed no "significant symptoms that are causing [Lacourse] impairment in her daily life." Id. at 33. The ALJ also afforded "some weight" to the opinion of a state agency psychological consultant, who concluded that Lacourse "has no severe psychological or cognitive impairment, with only mild limitations in activities of daily living, social functioning, and ability to maintain concentration, persistence or pace." Id.

Importantly, as the ALJ points out, Dr. Slotnick's conclusion that Lacourse did not appear to have "the requisite stamina and overall ability to maintain full-time employment" focused on her ability to work "at a level equal to that which existed" before the onset of her disability. Id. at 1083. He noted, instead, that "an active job search would seem appropriate," as it "could assist in identifying and ultimately pursing and securing a potential career path compatible with her medical, emotional, and cognitive status." Id. As the ALJ observed, Dr. Slotnick did "not indicate whether the claimant is able to work full-time in an unskilled position . . . ." Id. at 35. In light of the thorough treatment that the ALJ afforded Dr. Slotnick's report and those of the other opinions addressing the effect of Lacourse's mental impairments, the court simply cannot conclude that the ALJ erred in the weight he afforded to

7

Dr. Slotnick's conclusion that Lacourse may be able to work part-time.

None of Lacourse's arguments to the contrary alter that conclusion. Lacourse argues that the ALJ should have afforded Dr. Slotnick's evaluation greater weight because it "was founded upon a cluster of causes," rather than "based upon a cognitive impairment alone," Plaintiff's Mem. (document no. 7-1) at 8, and because of the "thoroughness and depth of [his] neuropsychological evaluation," id. at 10. The ALJ, in fact, acknowledged the thoroughness of Dr. Slotnick's evaluation and afforded "his opinion weight to the extent that he finds there is little evidence of any cognitive impairment," a conclusion he determined was consistent with Lacourse's treatment records, Admin. R. at 35, and one that Lacourse does not challenge. Furthermore, as the Acting Commissioner points out, the ALJ considered and afforded weight to other medical sources -- including Dr. Gustavson -- who did not render their opinions in a vacuum, but also considered a variety of factors in drawing their conclusions.

Lacourse's suggestion that Dr. Slotnick's opinion concerning the amount of time that Lacourse could work should be given greater weight because Dr. Slotnick performed a follow-up interview some months later, Plaintiff's Mem. (document no. 7-1) at 12, fares equally poorly. Though a subsequent visit may have

8

confirmed Dr. Slotnick's earlier conclusions, it provided, he explained, "little additional information . . . to add to that described initially." Admin. R. at 1178. As such, the fact of a second interview that had little impact on Dr. Slotnick's opinion does not provide grounds for this court to conclude that the ALJ erred in evaluating those opinions.[1]

Lacourse further argues that the ALJ erred in discounting Dr. Slotnick's conclusion in light of the fact that his is the only neuropsychological opinion in the record. See Plaintiff's Mem. (document no. 7-1) at 10-12. The ALJ ought "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). At the same time, "the more consistent an opinion is with the record as a whole, the more weight" that opinion should be given. Id. § 404.1527(c)(4). The ALJ complied with these requirements, affording weight to Dr. Slotnick's opinion as a neuropsychologist to the extent that his findings were

---

[1] Lacourse does not go quite so far as to contend that subsequent evaluative visits rendered Dr. Slotnick a treating provider, entitling his opinion to controlling weight under 20 C.F.R. § 404.1527. Nor does he appear to the court to be a "treating source," that is, Lacourse's "own physician, psychologist, or other acceptable medical source who provides [her], or has provided [her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [her]." Id. § 404.1502.

9

"supported in [Lacourse's] treatment records and normal neurological and IQ testing." Admin. R. at 35. To the extent that the ALJ concluded that a specific portion of Dr. Slotnick's opinion lacked support in the record, however, he gave it less weight. Id. Accordingly, the ALJ did not err in his treatment of this specialist's opinion.[2]

Finally, Lacourse argues that "the ALJ's RFC finding was tainted by his credibility assessment." Plaintiff's Mem. (document no. 7-1) at 13. The court rejects that argument in light of its conclusion that the ALJ did not err in his credibility assessment. See infra Part III.B.

### B. Subjective complaints and credibility

Lacourse next contends that the ALJ erred in evaluating her subjective complaints. It is the ALJ's responsibility "to evaluate the credibility of a claimant's testimony about [his] symptoms and their limiting effect in light of all the other evidence of record, rather than to simply accept the testimony as true." Scanlon v. Astrue, 2013 DNH 088, 15 n.4. This court will generally defer to that determination when the ALJ supports

---

[2] To the extent that Lacourse supports her position with citation to cases wherein the opinion of a specialist who was also a treating provider was given greater weight, see, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000); Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000), those cases are inapposite here. As discussed supra at 9 n. 1, Lacourse does not contend that Dr. Slotnick was a treating provider.

10

it with specific evidence in the case record. Simmons v. Astrue, 736 F. Supp. 2d 391, 401 (D.N.H. 2010) (citing Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)). Though the evidence in the record may allow for more than one conclusion, the ALJ's credibility determination will be upheld so long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz, 955 F.2d at 769 (quotation marks omitted).

As Lacourse points out, the ALJ evaluates subjective complaints according to SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (S.S.A. 1996), which

> outlines a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?

Comeau v. Colvin, 2013 DNH 145, 21 (internal quotations omitted); see also 20 C.F.R. § 404.1529. Following that process, the ALJ concluded that Lacourse's impairments crossed the threshold of the first question, in that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." Admin. R. at 30. At the second

11

at third steps, however, he concluded that Lacourse's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Id.

Lacourse contends that the ALJ ignored pertinent evidence and "failed to fairly consider all of the evidence in the entire record" when assessing her credibility. See Plaintiff's Mem. (document no. 7-1) at 15. In doing so, Lacourse raises four arguments, none of which prevail.

Lacourse first faults the ALJ for failing to address her work history. See 20 C.F.R. § 404.1529(c)(3); see also Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). In his credibility analysis, the ALJ did note that she had previously worked full time, see Admin. R. at 31 (Lacourse "was able to work full-time previously," despite her fibromyalgia diagnosis), and that she considered part-time work, id. at 31-32 (Lacourse was "interested in working part time in the schools" and reported "that she would like to teach again in some capacity."). In light of this, and the fact that Lacourse does not explain how a more detailed analysis of Lacourse's work history and attempts to find part-time and other work would alter the ALJ's credibility analysis, the court rejects this argument.

Lacourse further disputes the ALJ's characterization of her activities of daily living and, specifically, that they

12

reflected "an active, robust lifestyle." Admin. R. at 32. The ALJ observed that Lacourse reported that she walks regularly for exercise, hikes, enjoys reading, drawing, and painting, drives, shops, performs household chores, maintains a positive relationship with her family members, and independently runs errands and attends appointments. Admin. R. at 32. To the extent the Lacourse, to counter that conclusion, cites record evidence that casts doubt on her ability to perform daily activities, such conflicting evidence is for the ALJ to resolve. Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). And the ALJ, resolving those conflicts, may draw negative conclusions about the claimant's credibility. Mason v. Astrue, 2013 DNH 013, 14; see also St. Pierre v. Shalala, No. 94-232, 1995 WL 515515, at *3 (D.N.H. May 25, 1995) ("When evaluating the subjective claims of pain it is proper and, indeed, required that the ALJ consider daily activities such as driving, walking and household chores. This allows the Secretary to juxtapose the claimant's subjective allegations of pain with the relative intensity of [her] daily regimen.") (internal citations omitted). Insofar as the ALJ supported his conclusion with rather thorough citations to a not insignificant record, see Irlanda Ortiz, 955 F.2d at 769, the court concludes that the ALJ did not err in his analysis of Lacourse's activities of daily living.

Next, Lacourse highlights record evidence documenting her "chronic symptoms" and the fact that physical activity aggravated those symptoms. See Plaintiff's Mem. (document no. 7-1) at 17-20. Presumably, though Lacourse does not argue as much explicitly, she believes that this evidence compels more sympathetic conclusion as to Lacourse's credibility. However, as the Acting Commissioner observes, the ALJ supported his credibility determination with extensive citations to record evidence suggesting that Lacourse's subjective allegations of pain ran inconsistent with the results of a variety of tests, the conclusions of several medical providers, and even her own reports during treatment. See Admin. R. at 30-32. Accordingly, because the ALJ's decision "contains specific, clear reasons for his credibility determination that are supported by record evidence," Perry v. Colvin, 2014 DNH 198, 7, the court finds no error on these grounds.

Finally, Lacourse objects to the ALJ's credibility assessment because three "statements made in the ALJ's decision that . . . could be viewed to impact negatively on the credibility of the plaintiff's subjective complaints." Plaintiff's Mem. (document no. 7-1) at 20. Presumably, though she does not say as much, Lacourse intends to suggest that the statements were either incorrect or that the ALJ erred in

14

considering the evidence discussed in those statement.  As best the court can make them out, none of these arguments succeeds.

To the extent that Lacourse argues that the ALJ incorrectly relied on the normality of Lacourse's neurological testing and clinical exams with respect to her complaints of fibromyalgia-related pain, see Plaintiff's Mem. (document no. 7-1) at 20), the ALJ did not run afoul of Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009).[3]  Here, the ALJ concluded not that Lacourse did not suffer from the symptoms of fibromyalgia; but rather that her subjective complaints as to their intensity, persistence, and limiting effects were not entirely credible.  See Admin. R. at 30.  Nor did he base that conclusion solely on the fact that her neurological testing and clinical exams.  He also supported it with citations to record evidence demonstrating that Lacourse was able to work full-time "for many years" after she was diagnosed with fibromyalgia, that her

---

[3] As the Court of Appeals for the First Circuit has noted, there is often little "objective" medical evidence of fibromyalgia and, as such, ALJ errs when he "effectively . . . requir[es] objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines." Johnson, 597 F.3d 409, 412 (1st Cir. 2009) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106-07 (2d Cir. 2003)).  Thus, "once the ALJ accepted the diagnosis of fibromyalgia, [he] also 'had no choice but to conclude that the claimant suffer[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms.'"  Id.

treatment records did not support her allegation that the condition worsened after a motor vehicle accident in 2011, and that she had been "doing well" on Cymbalta.  See Admin. R. at 31.

Plaintiff next appears to argue that the ALJ erred when he "downplayed the severity of [her] pain because she was reluctant to undergo an occipital nerve block."  See Plaintiff's Mem. (document no. 7-1) at 20.  An ALJ may draw inferences about the severity of a claimant's symptoms when the claimant declines treatment to address them.  See Valley v. Barnhart, 2003 DNH 165, 13-14.  When doing so, the ALJ must "first consider[] any explanations that the individual may provide, or other information in the case record, that may explain" that decision.  SSR 96-7p, 1996 WL 374186, at *7.  Here, the ALJ took into account Lacourse's reasoning -- that there was no guarantee a nerve block would work.  Admin. R. at 31.

Finally, the court finds no error vis-à-vis Lacourse's credibility in the ALJ's statement that Lacourse's "treating provider believed that she did not need mental health counseling . . . ."  See Plaintiff's Mem. (document no. 7-1) at 21.  The ALJ considered that opinion among, as discussed more thoroughly supra, a variety of others, and crafted an RFC that accounted for Lacourse's severe mental health impairments.  The court

16

accordingly finds no error in these three statements in the ALJ's decision.

## IV. Conclusion

For the reasons just explained, the ALJ's conclusion that Lacourse is not disabled is supported by substantial evidence in the record. Lacourse's motion to reverse the SSA's decision[4] is DENIED and the Acting Commissioner's motion to affirm[5] is GRANTED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

    /s/Joseph N. Laplante
Joseph N. Laplante
United States District Judge

Dated: August 17, 2016

cc: Raymond J. Kelly, Esq.
    T. David Plourde, Esq.

---

[4] Document no. 7.
[5] Document no. 8.

17